# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

**CAROLYN S. RAUP,**

    Plaintiff,

v.

**VAIL SUMMIT RESORTS, INC.,**

    Defendants.

_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiff, Carolyn S. Raup, by and through her undersigned attorneys, for her Complaint, states and alleges as follows:

## PARTIES

1. Plaintiff Carolyn S. Raup ("Raup") is an individual who resides at 3510 Wendel Cove VIII, Austin, Texas 78731.

2. Defendant Vail Summit Resorts, Inc. ("Vail") is a Colorado Corporation. Its principal executive office is located at 390 Interlocken Crescent, Broomfield, Colorado 80021.

3. Vail, at all times relevant to the matters set forth in this complaint, operated Breckenridge Ski Resort ("BSR") located in Breckenridge, Colorado.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter and the parties thereto pursuant to 28 U.S.C.A. § 1332. Plaintiff, Raup, is a citizen of the State of Texas, and Defendant, Vail, is a Colorado Corporation with its principal place of business in Colorado.

5. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(a)(1) because the Defendant conducts business, receives correspondence, and is subject to service of process, and is a resident in the District of Colorado.

## GENERAL ALLEGATIONS

6. BSR is a mountain resort located in Summit County, Colorado operating in the winter months as a ski resort, and in the summer months providing non-skiers mountain activities.

7. On June 25, 2013, Vail was the "ski area operator" for BSR as that term is defined in §33-44-103(7), C.R.S. (the "Ski Safety Act"). The actions herein, however, did not involve the "inherent risks of skiing," nor was Raup a "skier." Thus, the restrictions of the Ski Safety Act are not applicable to this claim.

8. On June 25, 2013, Vail was the "area operator" of a passenger tramway as that term is defined in §25-5-702(1), C.R.S. (the "Tramway Act"). The Tramway Act and the standards it establishes *are* applicable to this claim.

9. On June 25, 2013, Vail, as well, met the definition of a "landowner" with regard to BSR, as the term landowner is contemplated by §13-21-115(1), C.R.S. (the

"landowner liability statute"), since it was an owner or lessee of the resort property, was "in possession of" the property, as well as legally responsible for the "condition of [property] or for the activities conducted on or circumstances existing on the [property]."

10.     The area operator of a passenger tramway, such as Vail, is and was on and before June 25, 2013, primarily responsible for the design, construction, maintenance, operation and inspection of passenger tramway devices without restriction as to the season of operation.  §25-5-705, C.R.S.

11.     On June 25, 2013, Vail also operated a Summer Fun Park ("Park") at the base of Peak 8 of the BSR where it offered what it described as "scenic chair lift rides" on the Colorado SuperChair ("Chair Lift").

12.     On June 25, 2013, Raup, while vacationing in Breckenridge, Colorado with her daughter and a friend of her daughter, decided to visit the Park and enjoy the scenery on a ride up the Chair Lift.

13.     Raup thereby met the definition of an "invitee" as that term is defined in the landowner liability statute at §13-21-115(5)(a), C.R.S., since she had entered onto Vail's property "in response to [Vail's] express or implied representation that the public is requested, expected, or intended to enter or remain."

14.     Raup waited in the Park while her daughter purchased tickets for the three of them to ride the Chair Lift.  Their intention was to enjoy the scenery on the ride and not disembark at the top of the ride, but instead continue the ride back to the bottom.

Prior to loading, no instructions of any kind were given regarding the use of the Chair Lift.

15. The three passengers loaded onto the Chair Lift, lowered the safety bar, and enjoyed the ride toward the top of the mountain. They were thereby passengers on a "passenger tramway" as such term is defined by the Tramway Act at §25-5-702(4), C.R.S.

16. A sign at the top of the lift reading "Prepare to Unload, Raise Bar" is reasonably interpreted to be applicable only with regard to skiers.

17. As they were near the top and intending to go back down on the Chair Lift without unloading , suddenly a lift operator employed by Vail, affirmatively and negligently rushed out of the building at the top waiving his hands and directed them to immediately "lift the bar" and get off the chairlift. Pursuant to the Tramway Act, the passengers, including plaintiff, were obligated to "follow verbal instructions that are given to [them] regarding the use of the passenger tramway." See §33-44-105(1), C.R.S. Not only was there no apparent need for them to disembark at that point, since the ski lift was also used to transport individuals back down the mountain, the lift operator had or should have been in a position to have had other safe options given that he wanted them to disembark, such as stopping the chairlift.

18. The chairlift operator in fact knew or should have known as well that his affirmative command, if obeyed by Raup, would put her in a precarious and dangerous

situation, where Raup, a middle aged woman, would have to suddenly raise the bar and disembark from the chairlift while the lift was moving toward a declining slope designed for skiers and not summer passengers.

19. The lift operator, as well, negligently made no effort to physically assist Raup at the disembarking area.

20. Also, the disembarking area was not properly designed for passenger traffic during the summer, particularly given the sudden command of the operator, but was instead only designed for skiers because of the steep slope that followed the area where passengers were to disembark. Thus, among many other things, Vail was operating a passenger tramway "while a condition exist[ed] in the design, construction, operation, or maintenance of the passenger tramway which endangers the public health, safety, or welfare, which condition was known, or reasonably should have been known, by [Vail]," in violation of the provisions of the Tramway Act, at §25-5-706(3)(c), C.R.S., and the violation of such provision is designated to constitute negligence on the part of the operator. See §33-44-104(2), C.R.S.

21. Each of the three passengers obeyed the operator's command to disembark. In doing such, Raup's daughter quickly lifted the bar, causing one of her mother's shoes to fall off. Raup's daughter and her friend were able to jump off the Chair Lift, although the quickness of the maneuver and the steepness of the incline where they exited caused even them to have to run forward for several steps before they could stop.

22. Raup was not as fortunate. As she attempted to exit the Chair Lift, the chair struck her in the back and she fell to the left off the edge of the ramp onto the concrete and stone surface below, suffering serious injury, including, among other things, a left femur fracture, left tibial plateau fracture, and left ankle fracture dislocation.

23. Raup was hospitalized and underwent surgery to repair the femur fracture and the left ankle fracture dislocation. After release from the hospital, she was required to undergo extensive rehabilitative treatment for several months, disrupting her ability to work and pursue normal activities. She has as well incurred extensive and continuing medical and related expenses, including subrogated claims.

24. Because of the injuries to Raup in the fall described, she has been and remains permanently impaired and disabled, continues to undergo treatment and rehabilitation, continues to experience pain and discomfort, and is unable to pursue her pre-accident normal activities.

**FIRST CLAIM FOR RELIEF**
(*Claim Pursuant to the Landowner's Liability Statute at §13-21-115, C.R.S.*)

25. All previous allegations are incorporated as if more fully set forth herein.

26. Vail's actions or lack thereof constituted a violation of its obligations to Raup, as an invitee, as set forth in the landowner's liability statute at §13-21-115(3)(c), C.R.S. Specifically, Vail's actions, through its operator and otherwise, constituted an "unreasonable failure to exercise reasonable care to protect [Raup] against dangers of which [Vail] actually knew or should have known."

27.     As a proximate result of such, Raup has sustained the damages and losses set forth above.

WHEREFORE, Plaintiff Raup prays that judgment be entered against Vail, for compensation in an amount to be determined at trial for damages to include but not limited to pain and suffering, emotional distress, loss of time, loss of enjoyment of life, physical and vocational disability, loss of income or any other economic loss, past and future medical or related expenditures, subrogated claims, attorney fees as provided for by contract or specific statute, pre- and post-judgment interest, costs, and any other relief deemed appropriate.

## SECOND CLAIM FOR RELIEF
*(Negligence, Including Negligence Per Se)*

28.     All previous allegations are incorporated as if more fully set forth herein.

29.     As set forth above, Vail was operating a passenger tramway "while a condition exist[ed] in the design, construction, operation, or maintenance of the passenger tramway which endangers the public health, safety, or welfare, which condition was known, or reasonably should have been known, by [Vail]," in violation of the provisions of the Tramway Act, at §25-5-706(3)(c), C.R.S., and the violation of such provision is designated to constitute negligence on the part of the operator. See §33-44-104(2), C.R.S. Vail's obligations pursuant to the Tramway Act are not preempted by the landowner liability statute.

30.     The lift operator was negligent as well in abruptly ordering plaintiff to

disembark from the chairlift, as described above, as well as not being in a position to and/or choosing not to exercise the safe options of either stopping the chairlift, assisting Raup in getting off of the chairlift, or allowing her to continue to travel down the mountain in the chairlift.

31.    Further, the operator's actions consisted of affirmative actions, negligently undertaken, not within the contemplated scope of coverage of the landowner liability statute and not preempted by such.

32.    By longstanding precedent, Vail, as a ski lift operator, is responsible for "the highest degree of care commensurate with the practical operation of the lift," since plaintiff entirely surrendered herself to its control when she loaded onto the Chair Lift per Vail's invitation. *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 80 (Colo. 1998).

33.    As a direct and proximate result of the negligence of Vail as aforedescribed, Raup has sustained the damages and losses described above.

WHEREFORE, Plaintiff Raup prays that judgment be entered against Vail, for compensation in an amount to be determined at trial for damages to include but not limited to pain and suffering, emotional distress, loss of time, loss of enjoyment of life, physical and vocational disability, loss of income or any other economic loss, past and future medical or related expenditures, subrogated claims, attorney fees as provided for by contract or specific statute, pre- and post-judgment interest, costs, and any other relief

deemed appropriate.

## JURY DEMAND

Plaintiff demands a trial to a jury.

DATED this 30th day of March, 2015,

        Cristiano Law, LLC

        *s/ Francis Vincent Cristiano*
        Francis V. Cristiano, Esq.
        50 S. Steele St., Ste. 930
        Denver, CO 80209
        (303) 407-1777
        (303) 322-9574 - FAX
        frank@cristianolaw.com

        Joseph J. Mellon, Esq.
        The Mellon Law Firm
        50 S. Steele St., Ste. 930
        Denver, CO 80209
        (303) 915-0198
        jmellon@mellonlaw.com

        *Attorneys for Plaintiff*

Plaintiff's address:
3510 Wendel Cove VIII
Austin, Texas 78731