IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00641-WYD-NYW

CAROLYN S. RAUP,

    Plaintiff,

v.

VAIL SUMMIT RESORTS, INC.,

    Defendant.

**ORDER**

I.    <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

This matter is before the Court on Defendant Vail Summit Resort Inc.'s ["Vail"] Partial Motion to Dismiss Amended Complaint filed on June 1, 2015.  A response in opposition to the motion was filed on June 12, 2015, and a reply was filed on June 26, 2015.  Thus, the motion is fully briefed.

This case arises out of injuries Plaintiff sustained when she attempted to disembark from the top of the Colorado SuperChair chair lift at Breckenridge Ski Resort during the summer of 2013.  (Compl. ¶¶ 11, 21-22.)  Plaintiff alleges that this occurred at a Summer Fun Park at Breckenridge, which included scenic chair lift rides on the Colorado SuperChair. (*Id.*, ¶ 11.)  Vail is alleged to be the landowner of the Summer Fun Park, including the chair lift.  (*Id.*, ¶ 9.)

Plaintiff asserts that as she and two other passengers (Plaintiff's daughter and a friend) were near the top and intending to go back down on the chair lift without

unloading, suddenly a lift operator employed by Vail, on his own initiative, affirmatively and negligently rushed out of the building at the top waiving his hands and directed them to immediately "lift the bar" and get off the chairlift. (*Id.*, ¶ 19.) Plaintiff alleges that pursuant to the Tramway Act, the passengers, including Plaintiff, were obligated to "follow verbal instructions that are given to [them] regarding the use of the passenger tramway." (*Id.*) (citing Colo. Rev. Stat. § 33-44-105(1)). It is alleged that not only was there no apparent need for them to disembark at that point, since the ski lift was also used to transport individuals back down the mountain, the lift operator had or should have been in a position to have had other safe options for them to disembark, such as stopping the chairlift. (*Id.*)

According to the Complaint, the chairlift operator in fact knew or should have known as well that his affirmative command, if obeyed by Plaintiff, would put her in a precarious and dangerous situation, where Plaintiff, a middle aged woman, would have to suddenly raise the bar and disembark from the chairlift while the lift was moving toward a declining slope designed for skiers and not summer passengers. (Compl., ¶ 18.) The lift operator, as well, negligently made no effort to physically assist Plaintiff at the disembarking area. (*Id*, ¶ 19.) Also, it is alleged that the disembarking area was not properly designed for passenger traffic during the summer, particularly given the sudden command of the operator, but was instead only designed for skiers because of the steep slope that followed the area where passengers were to disembark. (*Id.*, ¶ 20.) Thus, among many other things, Plaintiff alleges that Vail was operating a passenger tramway "while a condition exist[ed] in the design, construction, operation, or

maintenance of the passenger tramway which endangers the public health, safety, or welfare, which condition was known, or reasonably should have been known, by [Vail]," in violation of the provisions of the Tramway Act, at § 25-5-706(3)(c), C.R.S., and the violation of such provision is designated to constitute negligence on the part of the operator. (*Id.*) (citing C.R.S. § 33-44-104(2)).

Each of the three passengers allegedly obeyed the operator's command to disembark. (Compl., ¶ 21.) Plaintiff's daughter and her friend were able to jump off the chair lift, although the quickness of the maneuver and the steepness of the incline caused them to have to run forward for several steps before they could stop. (*Id.*) Plaintiff was allegedly not as fortunate. As she attempted to exit the lift, the chair struck her in the back and she fell to the left off the edge of the ramp onto the concrete and stone surface below, suffering serious injury, including, among other things, a left femur fracture, left tibial plateau fracture, and left ankle fracture dislocation. (*Id.*, ¶ 22.) )

Plaintiff brings claims against Vail pursuant to the Premises Liability Act, Colo. Rev. Stat. § 13-21-115 (Count I) and for negligence, including negligence *per se* (Count II). Vail argues that Plaintiff's negligence/negligence *per se* claims in Count II should be dismissed because the Premises Liability Act provides the sole grounds for relief.

II.   ANALYSIS

   A.   Standard of Review

In reviewing a motion to dismiss, the court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim. *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). To

survive a motion to dismiss under Rule 12(b)(6), the party asserting the claim "must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted). "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation omitted).

Thus, a party asserting a claim "must include enough facts to 'nudge[] h[er] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

      B.      <u>The Merits of Vail's Arguments</u>

The issue that must be resolved in connection with Vail's partial motion to dismiss is whether the Premises Liability Act provides the sole grounds for relief in this matter, preempting Plaintiff's negligence and negligence *per se* claims. Vail relies on the Colorado Supreme Court's opinion in *Vigil v. Franklin*, 103 P.3d 322 (Colo. 2004) (en banc), which held that common law landowner duties did not survive the enactment of the Premises Liability Act. The Colorado Supreme Court based this holding on the fact that the "the express, unambiguous language of the statute evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property." *Id.* at 323.

Thus, *Vigil* noted the "broad scope of the statute", which states in relevant part:

> (2) In *any* civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable *only* as provided in subsection (3) of this section.

103 P.3d at 326 (quoting Colo. Rev. Stat. § 13-21-115(2)) (emphasis added).  It held that this "is specific in its terms and is without ambiguity or qualification", and showed that "the General Assembly indicated its intent to comply occupy the field and supersede the existing law in the area." *Id.* at 328.  The Assembly was found to have reiterated its intent to be comprehensive and exhaustive by using the language "only as provided in subjection (3)." *Id.*  The *Vigil* court stated that "[t]his language, coupled with the precisely drawn landowner duties in subsection (3), leaves no room for application of common law tort duties.  *Id.*  Indeed, it found that "the premises liability classification of the duty owed licensees and invitees" was "complete and exclusive."  *Id.*

The *Vigil* court also found that the "operational mechanism of the statute . . . demonstrates the General Assembly's intent to preempt common law tort duty analyses." 103 P.3d at 328.  Thus, it stated:

> At common law the existence of a duty was a question of law to be determined by the court. . . .Under the premises liability statute, the only issue of law to be determined by the court is the classification of the injured plaintiff; liability and damages are questions of fact to be determined by the trier of fact. § 13–21-115(4). In keeping with our responsibility to give effect to every word and term contained within the statute, if possible, . . . a judge's common law obligation to determine the existence of landowner duties is inconsistent with the limited role the statute assigns the judge, and would impermissibly enlarge the role of the court beyond that indicated in the statute's plain language.

*Id.*

Since the statute was found to be clear and unambiguous on its face, the Colorado Supreme Court stated it "need not look beyond its plain terms" and "must apply the statute as written." *Vigil*, 103 P.3d at 328.  Even so, it found this "construction of the statute as preemptive and exhaustive is consistent with case law from the court of appeals and the observations of authoritative Colorado tort commentators." *Id.* at 329. In so finding, the court cited several cases which held that the Premises Liability Act abrogates common law claims for negligence.  *Id.*  Finally, the court found that the passage of the Premises Liability Act also abrogated the common law regarding defenses to the existence of such duties, including the common law open and obvious danger doctrine that was at issue in that case. *Id.* at 330.

A few years later, the Colorado Supreme Court found that claims of negligence per se against a landowner to recover damages for injuries sustained on the premises are also preempted by the language of the Premises Liability Act.  *Lombard v. Colo. Outdoor Education Center, Inc.*, 187 P.3d 565, 574 (Colo. 2008) (en banc).  *Lombard* court noted that "[t]he underlying principle of the common law doctrine of negligence per se is that legislative enactments such as statutes and ordinances can prescribe the standard of conduct of a reasonable person such that a violation of the legislative enactment constitutes negligence." *Id.* at 573.  "Thus, the doctrine serves to conclusively establish the defendant's breach of a legally cognizable duty owed to the plaintiff." *Id.*  The court found that "it would be entirely inconsistent with the plain language of the statute and the holdings of this court to bypass the statute and allow for the imposition of liability on the basis of a negligence per se claim." *Id.* at 575.

I agree with Vail that the *Vigil* and *Lombard* cases make clear that all common law claims involving landowner duties, including negligence and negligence per se claims, are abrogated by the Premises Liability Act which provides the exclusive remedy. While Plaintiff argues that *Vigil*'s holding addressed on the merits only as to the defense of the common law open and obvious danger and that its statements regarding common law claims involving landowner duties are dicta, I disagree. The Colorado Supreme Court's interpretation of the scope of the Premises Liability Act was necessary to its ultimate holding in the case regarding whether the affirmative defense of open and obvious danger survived the codification of premises liability law despite the preemptive scope of the law. *See Vigil*, 103 P.3d at 328-332. Further, the Supreme Court reaffirmed its interpretation in *Lombard*.

Plaintiff also argues, however, that there is still a common law claim she can assert based on the Tramway Act, relying on *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 80 (Colo. 1998). In *Bayer*, the Colorado Supreme Court held that the Ski Safety Act and the Passenger Tramway Safety Act did not preempt a common law claim for injury on a ski lift or the highest degree of care standard that the common law had previously applied. *Bayer*, 960 P.2d at 72. I agree with Vail, however, that *Bayer* is not controlling here because the question of the applicability of the Premises Liability Act was not presented. Six years after *Bayer*, the Colorado Supreme Court in *Vigil* made clear that the Premises Liability Act preempted all common law claims and provided the sole method of recovering against a landowner. *Vigil*, 103 P.2d at 328. The fact that *Vigil* did not reference *Bayer* does not change this result.

I note that the Colorado Court of Appeals applied *Vigil* in *Anderson v. Hyland Hills Park & Recreation Dist.*, 119 P.3d 533 (Colo. App. 2004), in a claim for negligence in connection with an amusement park. It addressed whether the trial court erred in applying the higher standard of care applicable to amusement ride cases rather than that in the premises liability statute. The *Anderson* court held that the Premises Liability Act preempted any common law claim and trumped the highest degree of care standard in the amusement ride context. 119 P.3d at 536. In reaching its conclusion, the *Anderson* court distinguished prior case law that applied the same "highest duty of care" common law claim as in *Bayer*. *See id*. The issue here is the same as presented in *Anderson*.

Plaintiff also argues, however, that Vail's employee *created for himself* and his employer a duty of reasonable care at the point where he *affirmatively acted* and chose to order Plaintiff and her fellow passengers to immediately disembark from the chairlift – allegedly creating the peril which caused Plaintiff's injuries. She asserts that this issue was not addressed in *Vigil* or *Anderson*, and that landowners cannot seek refuge with the Premises Liability Act for duties that they independently create for themselves by their own affirmative acts, particularly when such actions have nothing to do with the condition of the property or its maintenance.

In that situation, Plaintiff argues that the landowner's potential liability is not confined to nor controlled by the Premises Liability Act since they don't involve "failures to act" or acts of "nonfeasance" as addressed therein, but instead involve affirmative acts of malfeasance which the statute does not address. Plaintiff asserts that liability for

acts of such malfeasance are instead controlled by the general analysis for tort liability as set forth in a non-exhaustive manner in the case of *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987). Plaintiff further relies on *Westin Operator, LLC v. Groh*, 347 P.3d 606 (Colo. 2015) where the court found an independent duty to exercise reasonable care based upon the affirmative action and malfeasance of the landowner in evicting an intoxicated guest without exercising reasonable care in doing such.

I agree with Vail that *Groh* and *Whitlock* are not applicable here, as they did not address or involve the Premises Liability Act. Indeed, *Groh* dismissed a claim under that Act because "by its terms, it applies only when a plaintiff is injured on the defendant's property, and Groh was injured off-premises. 347 P.3d at 610 n.3. The "assumed duty" found in *Groh* applies only in situations where no duty already exists. Here, Vail's duty of care to invitees such as Plaintiff is defined under the Premises Liability Act, which makes clear that it applies in actions by a person who alleges injury while on the property of another and by reasons of either the condition of the property or activities conducted on the property. This encompasses the allegations at issue in this case, including the injuries allegedly sustained by Plaintiff by activities of Vail's employee in ordering Plaintiff and her fellow passengers to immediately disembark from the chairlift. As such, the Premises Liability Act provides the only standard for recovery. Vail's motion is granted, and Count II is dismissed.

III.  CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant Vail Summit Resort Inc.'s ["Vail"] Partial Motion to Dismiss Amended Complaint (ECF No. 11) is **GRANTED.**  Count II of the Complaint, asserting negligence and negligence per se, is **DISMISSED**.

Dated:  February 1, 2016

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge