IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00641-WYD-NYW

CAROLYN S. RAUP,

    Plaintiff,

v.

VAIL SUMMIT RESORTS, INC.,

    Defendant.

**ORDER ON SUMMARY JUDGMENT**

I.    INTRODUCTION

    This lawsuit involves a claim under Colorado's Premises Liability Act.  The case arises from Plaintiff's injury when she was exiting the Colorado SuperChair chairlift at Breckenridge.  Plaintiff's negligence claim was previously dismissed by Order of February 1, 2016 (ECF No. 45).

    Defendant Vail Summit Resorts, Inc. ["Vail"] argues in its Motion for Summary Judgment that Plaintiff's remaining premises liability claim fails as a matter of law for two reasons.  First, Vail asserts that Plaintiff has not established, and cannot establish, the standard of care for a reasonable ski area operator in Vail's position or that Vail breached the standard of care.  Second, it is argued that Plaintiff's claim is barred by the liability waiver she agreed to when she used her lift ticket to ride the Colorado SuperChair.  Plaintiff's Cross-Motion for Summary Judgment Re Issue of Waiver

asserts that Plaintiff is entitled to judgment as a matter of law in connection with the alleged liability waiver because she asserts that it is not an enforceable contract.

For the reasons stated below, Defendant's Motion for Summary Judgment is granted. Plaintiff's Cross-Motion for Summary Judgment Re Issue of Waiver is denied.

II. <u>FACTS</u>

I have cited only those facts I deem materially relevant to my ruling. I have cited to the record only when the facts were disputed or where I otherwise thought it was necessary. Plaintiff's exhibits are referenced by number, and Defendant's exhibits are referenced by letter.

At all relevant times, Vail operated the Fun Park at the base of Breckenridge Peak 8, where it offered scenic chairlift rides on the Colorado SuperChair. Vail admits that it is a "landowner" as defined by Colo. Rev. Stat. § 13-21-115(1).

Plaintiff and her adult daughter, Elizabeth Raup, also referred to as Elizabeth Pyle, visited the Fun Park on vacation in June 2012, a year before the events at issue here.[1] Before boarding and riding the Colorado SuperChair in 2012, Plaintiff and Elizabeth Raup signed a release of liability. Plaintiffs do not dispute that the release of liability Plaintiff signed at that time unambiguously identified the risks associated with participating in Fun Park activities, including the use of chairlifts, and released Vail and its employees from all liability in negligence for any injuries sustained from participating in the activities. Plaintiff asserts, however, that she did not sign a release of liability in 2013 when she rode the chairlift and was injured.

---

[1] I will refer to Plaintiff's daughter as Elizabeth Raup in accordance with her deposition.

-2-

Vail asserts that Plaintiff was generally aware of the risks associated with riding a chairlift. (Ex. 1, C. Raup Dep. 39:12-17.) While Plaintiff denies this, she testified in response to a question about whether she knew there was some risk involved in riding the lift that "there's risk in everything you do. Getting in a car is a risk." (Ex. A, C. Raup Dep. 39:12-17). Plaintiff also testified that she was aware that if she were to fall out of the chair she might get seriously injured. (*Id.* at 39:5-11.)

On June 25, 2013, Plaintiff again visited the Fun Park with Elizabeth Raup and her husband, Jason Pyle [collectively "the Pyles"]. The Pyles purchased a lift ticket for Plaintiff to ride the Colorado SuperChair that day. A lift ticket was necessary to ride the chairlift. Plaintiff did not sign a release agreement at that time. Indeed, she was not asked to nor did she sign anything.

Vail asserts that Plaintiff looked at the front of the ticket before she rode the lift. (*Id.* at 36:6-13.) Plaintiff asserts that this is questionable as the Pyles purchased the lift tickets, not Plaintiff. Nonetheless, Plaintiff did testify that she looked at the front side of the ticket (*id.*), and her attempt to deny this is not credible.

The front of the lift ticket stated, in capital letters: "IMPORTANT WARNING ON REVERSE." (Ex. 4.) Plaintiff states that this was at the very bottom of the lift ticket and is printed in tiny 5 point font, as follows, "Important Warning on Reverse." The front of the ticket does not reference a "release" or "release agreement".

The back of the lift ticket contained the following language:

> The Holder of this lift ticket understands and VOLUNTARILY ASSUMES
> ALL RISKS associated with visiting the Fun Park, including the risks of
> property damage, personal injury, and death.

> The Holder agrees to not bring any claim or lawsuit against the Fun Park or its affiliates that could arise from the negligence of the Holder or others, including the negligence of the Fun Park operator or its employees, or from incidents occurring in connection with the natural environment or reasons outside the Fun Park's or its affiliates' control.
>
> The Holder understands that many activities in the Fun Park are self-directed, and that property damage, injury or death to Holder or others may occur as a result of the Holder's own decisions and actions in these activities.
>
> The Holder agrees to read and follow the directions and warnings on all posted signs, and to follow any verbal or written instructions provided by the Fun Park or its employees.
>
> The Fun Park and its affiliates affirmatively deny all liability for any property damages, injury, or death occurring as a result of or related to the Holder's visit to the Fun Park, and the Holder, by use of this ticket, hereby understands and accepts such denial of liability and agrees to hold harmless and indemnify the Fun Park and its affiliates for any claim or lawsuit that may arise as a result of or related to the Holder's visit.

(Ex. 4.)  Plaintiff points out, however, that this language is also likely not more than 5 pt. font, and that the title does not say "release" but says "warning".[2]

After purchasing their lift tickets, Plaintiff and the Pyles went to the base of the Colorado SuperChair to get on the lift.  (Ex. 2, E. Raup Dep. 81:15-20.)  Plaintiff and the Pyles got on the lift without incident, and rode the Colorado SuperChair pursuant to the purchased lift tickets.  They did not inform a lift attendant at the base of the lift that they intended to ride around the top of the lift and back down without getting off at the top.  They had informed the lift attendant of this in 2012.

Two lift towers before the top of the lift, there are signs that say "PREPARE TO UNLOAD / RAISE BAR" and "CHECK FOR LOOSE CLOTHING AND EQUIPMENT";

---

[2] It is unclear what font the lift ticket actually is, although I acknowledge it is small.  *See* Ex. 4.

and, at the unload point, there is a vertical sign on the right stating "UNLOAD HERE". Plaintiff asserts, however, that the signs are not as obvious as Vail makes them out to be. It is undisputed that these signs are posted in accordance with state law and the relevant American National Standards Institute ["ANSI"] standards.

The loading area at the time of the accident consisted of a flat area at the UNLOAD HERE sign followed by a gentle ramp with a decline of a 1-inch change in elevation over the distance of one foot. It is undisputed that the ramp design complies with Colorado law and the applicable ANSI Standard, B77.1-2011.

During summer operations, chairs on the Colorado SuperChair travel more slowly than in the winter, and as they proceed through the terminals the chairs automatically detach from the main haul rope and slow to 1.6 mph to allow for easy loading and unloading.

Vail asserts that as their chair approached the top station, Plaintiff and the Pyles did not raise their safety bar. Lift attendant Erik Sims testified that the attendants "lifted our hands in a pretty obvious motion of lifting the bar" and called out to them to lift the bar. (Ex. 8, E. Sims Dep. 22:20-23:4.) He also testified that when Plaintiff and the Pyles "reached a certain proximity to the unloading board that the attendants hit "slow". (*Id.* 23:5-8; 27:13-24.) Plaintiff denies that this is an accurate description of what she and the Pyles were confronted with at the top of the lift, and disputes that the lift operators hit the slow button on the lift.

Plaintiff's version of the events is that considerably past the "prepare to unload" sign, one of the lift operators finally began waving his arms and yelling at Plaintiff and

her companions to raise the foot rest and get off the chair. Elizabeth Raup testified that she and the Pyles did not get the message from the lift operators about lifting the bar until they were about five feet before the unloading bar. In an effort to comply with the attendants' commands, the passengers attempted to abruptly raise the foot rest and disembark from the chairlift, at which time they had to jump off. Plaintiff lost her sandal as the foot rest was being rapidly raised, and the chair lift did not, according to Elizabeth Raup, slow down for them to disembark. (Ex. , E. Raup Dep. 93:4-98:1.) Although the Pyles were able to disembark without significant incident, Plaintiff asserts she was not as fortunate.

Vail asserts that by her own account, Plaintiff unloaded from the chair without incident and took ten to twelve steps down the unload ramp with only one sandal on before she fell and sustained injury. (Ex. 1, C. Raup Dep. 66:17-67:7.) While this is consistent with what Plaintiff testified, Plaintiff argues this is in error. She asserts that she almost certainly did not take ten to twelve steps, but instead was approximately ten feet past the unload bar when she managed to hop off the chair, stumbled, and then was stuck from behind by the chair. She adopts Mr. Gerloff's Incident Investigation Report on this issue and her affidavit. (Ex. 5 at 5; Ex. 8, C. Raup Aff. ¶ 1.) Plaintiff was at that time approximately ten inches higher off the unloading platform than at the unloading bar. She almost immediately became trapped on the left side of the platform as the chairlift swung around to the left to head back down the mountain, stumbled, and was struck by the chairlift, which propelled her likely another nine feet off the platform.

(*Id.; see also* E. Raup Dep. 98:10-18, 100:5-11.) In the process, she suffered severe injuries to her leg and ankle.

It is undisputed that Plaintiff never informed the lift attendants that she needed special assistance or that she could not get off or was unable to get off the lift.

Vail asserts that Plaintiff did not fall because of the decline on the unload ramp. (Ex. 1, Raup Dep. 76:6-9.)  Plaintiff denies this, asserting that the declining slope was very problematic for her.  This caused her to have to, in Mr. Ferrara's words "hop off the chair", at which time she stumbled.  (Ex. D, J. Ferrara Dep. 22:14-18.)  Plaintiff then was struck by the chair as it swung around to the left to turn down the mountain.  Mr. Ferrara testified that there are quite a few people who fall getting on and off the chairlift each year, and that in the summertime people are not as familiar with the operation of the chairlift.  (*Id.* 10:10-19, 18:12-19:11.)

Plaintiff admits she has no specialized knowledge of industry practices, codes, standards, and/or regulations.  Further, Plaintiff has not disclosed any expert involving the standard of care or lift operations.  The only expert testimony in the case concerning lift operations is that of VSRI's expert, Chris Stoddard, a lift operations expert and the current chairman of the relevant ANSI Committee on Ski Lift Operations (ANSI B77.1). Plaintiff does not dispute that Mr. Stoddard opines that both the design and the operation of the Colorado SuperChair—including the design of the summer unloading area at the top of the chairlift, the signage in place, and the operation of the lift—complied with industry standards and was consistent with industry practice.

III.   ANALYSIS

   A.   Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court must view the evidence on summary judgment in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

When the parties file cross motions for summary judgment, the court is "'entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Cross motions for summary judgment must be treated

separately—the denial of one does not require the grant of another. *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

  B. <u>The Merits of the Motions</u>

    1. <u>The Standard of Care and Whether Vail Breached That Standard</u>

Vail argues that Plaintiff has not established, and cannot establish, the standard of care for a reasonable ski area operator in Vail's position because it did not designate an expert on this issue. Vail asserts that this standard of care requires specialized knowledge of chairlift operations that is beyond common knowledge.

Thus, Vail correctly asserts that when the standard of care is outside the common knowledge and experience of ordinary persons, "both the standard of care and the defendant's failure to adhere to that standard must be established by the expert opinion testimony of a qualified expert witness." *Sussman v. Stoner*, 143 F. Supp. 2d 1232, 1240 (D. Colo. 2001). "Whether the standard is a matter of common knowledge is a determination committed to the sound discretion of the trial court." *Oliver v. Amity Mut. Irrigation Co.*, 994 P.2d 495, 497 (Colo. App. 1999).

I find that an expert is not required in this case to establish the standard of care and whether it was breached. While Vail cites cases holding that expert testimony was required to establish addressing whether a ski operator complied with industry standards[3], that is not the issue here. It is undisputed that the design and general operation of the Colorado SuperChair, the ramp for disembarkment, and the signs

---

[3] *See Kidd v. Taos Ski Valley, Inc*, 88 F.3d 848, 852-53 (10th Cir. 1996); *Willink v. Boyne USA, Inc.*, 987 F. Supp. 2d 1082, 1084 (D. Mont. 2013); *Callister v. Snowbird Corp.*, 337 P.3d 1044, 1047 (Utah App. 2014).

leading up to the ramp, met industry standards.[4]  Instead, Plaintiff contends that Vail's lift operators failed to exercise reasonable care when they waited until considerably after Plaintiff and her companions were well past the sign instructing chair riders to lift their foot rests and prepare to unload to order them to lift the foot rest and disembark from the chairlift, and at a time that was allegedly past the safest location to disembark, resulting in Plaintiff's injury when she was struck from behind by the chairlift.  Plaintiff asserts that Vail's own expert has identified safer alternatives than those employed by the lift operators, per ANSI B77.1-200, which include assisting the passenger, stopping the chairlift, or engaging in careful observation and monitoring such that the chairlift would automatically stop on its own or continue on downhill.  Plaintiff also points out that whether the lift operators hit the slow button to slow down the chair as Plaintiff and the Pyles approached is a disputed question of fact.

    I agree with Plaintiff that it does not take an expert to determine whether the lift operators' conduct and choices were reasonable, as the standard of care is not outside the common knowledge and experience of ordinary persons.  *See Oliver*, 994 P.2d at 497 (finding that expert testimony was not required to establish the standard of care for the design, construction, and maintenance of an irrigation ditch, and noting that "Colorado courts have declined to require expert testimony in similar circumstances involving allegations of noncompliance with industry standards" where the standard of care was not beyond the knowledge and experience of the average juror); *Gerrity Oil &*

---

[4] Plaintiff asserts that she is not pursuing a claim for the defective design of the unloading ramp, understanding it to have been dismissed by the Court.

*Gas Corp v. Magness*, 946 P.2d 913, 930 (Colo. 1997) ("Because commission rules are only evidence of the applicable standard of care, expert testimony concerning standard industry customs and practices is relevant additional evidence of that standard if the standard is not within the common knowledge and experience of ordinary persons"). Accordingly, Vail's motion for summary judgment is denied on this issue.

I also find that there genuine issues of material fact as to whether Vail breached the standard of care. First, there are disputes about whether the lift operators were diligent and acted reasonably in connection with ordering Plaintiff and the Pyles to raise the bar and disembark when they were already past the "prepare to unload" sign, and when there is evidence that Plaintiff and the Pyles then had to hop or jump down from the lift. In that regard, Plaintiff points to, among other things, the safer alternatives set forth in ANSI B77.1-2011 and referenced by Vail's expert, including stopping the lift or assisting the passengers. Moreover, there is a genuine issue of material fact based on the evidence as to whether the lift operators slowed the chairlift before Plaintiff and the other passengers disembarked.

      2.    <u>The Effect of the Waiver</u>

I do, however, find that summary judgment is appropriate in favor of Vail and against Plaintiff in connection with the waiver of liability that was contained on the lift ticket. This lift ticket was required in order to be able to board and ride the chairlift.

Turning to my analysis, contractual waiver of liability clauses are recognized under Colorado law, but are construed narrowly and "closely scrutinized" to make sure that the agreement was fairly entered into and that the intention of the parties is

expressed in clear and unambiguous language. *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). Only agreements insulating a party from simple negligence may be recognized, and in no event will a release "provide a shield against a claim for willful and wanton negligence." *Id.* In determining whether a waiver of liability clause is valid, the court must consider the following four factors: "(1) the existence [or nonexistence] of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Id.*

In the case at hand, I find that the first two factors in *Jones* are satisfied. "[B]usinesses engaged in recreational activities" like Vail have been held not to owe special duties to the public or to perform essential public services. *See, e.g., Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004); *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1110 (10th Cir. 2002) (collecting cases and finding that "a recreational activity does not involve a public duty" or amount to an "essential activity"); *Rumpf v. Sunlight, Inc.*, No. 14-cv-03328-WYD-KLM, 2016 WL 4275386, at *3 (D. Colo. Aug. 3, 2016).

I also find that the contract was entered into fairly. "A contract is fairly entered into if one party is not so obviously disadvantaged with respect to bargaining power that the resulting contract essentially places him at the mercy of the other party's negligence." *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.2d 945, 949 (Colo. App. 2011). Here, I find that riding a chairlift is not an essential activity but is recreational in nature, and recreational activities "d[o] not possess a decisive advantage of bargaining strength

that puts participants "at the mercy" of any negligence by the recreational company. *Id*. Moreover, Plaintiff was free to walk away if she did not wish to assume the risks involved in connection with the chairlift. *See Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1157 (10th Cir. 2016).

I now turn to the fourth factor which is the most disputed. Under this factor, "'[t]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed.'" *Squires v. Breckenridge Outdoor Educ. Center,* 715 F.3d 867, 872 (10th Cir. 2013) (quoting *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo. 1989)). "In making this determination, Colorado courts examine 'the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions.'" *Id*. (quoting *Chadwick*, 100 P.3d at 467).

Here, as in the *Squires* case, I find that the waiver of liability "clearly reflects" an intent to extinguish liability. The lift ticket states that the Holder agrees "to not bring any claim or lawsuit against the Fun Park or its affiliates that could arise from the negligence of the Holder or others, including the negligence of the Fun Park operator or its employees...." (Ex. 4.) It also states that the holder of the ticket "understands and VOLUNTARILY ASSUMES ALL RISKS associated with visiting the Fun Park, including the risks of property damage, personal injury, and death", that the "Fun Park and its affiliates affirmatively deny all liability for any property damages, injury, or death occurring as a result of or related to the Holder's visit to the Fun Park", and that "the

Holder, by use of this ticket, hereby understands and accepts such denial of liability." (*Id.*) I find that this language is clear and unambiguous, is not inordinately long, and does not contain complex legal jargon. Moreover, it is substantially similar to the liability release Plaintiff personally signed when she visited the Fun Park in the Summer of 2012. (Ex. 3.)

I note that Colorado law does not require that exculpatory agreements refer to the specific activity in which the plaintiff participated and was injured. *Squires*, 715 F.3d at 873. The release was, however, on the back of the lift ticket that was required to ride the Colorado SuperChair. Moreover, I find the fact that Plaintiff did not sign or actually read the waiver of liability is not dispositive. Indeed, under Colorado law, contracts may be formed without signatures of the parties bound by them and without the party having read them. *E-21 Eng'g v. Steve Stock & Assocs.*, 252 P.3d 36, 39 (Colo. App. 2010); CJI-Civil § 30:6 ("An acceptance is an expression, by words *or conduct*, by the person to whom the offer was made, of agreement to the same terms stated in the offer.") Moreover, Plaintiff admitted that she read the front of her lift ticket, which states "IMPORTANT WARNING ON RELEASE". She had also signed a release of liability the previous year in 2012, and testified that she understood that riding a chairlift involved risks. Thus, I agree with Defendant that she assumed the risk of riding the chairlift again in 2013, and knew or should have known that her lift ticket contained a liability waiver, waiving the same rights as she did during her prior visit. *See Brigance v. Vail Summit Resorts, Inc.*, No. 15-cv-01394-WJM-NYW, 2017 WL 131797, at *9 (D. Colo. Jan. 13, 2017*)* (agreeing with Vail that Keystone lift ticket was binding on the plaintiff,

regardless of whether she had seen it, because she accepted its terms "by receiving the ticket and using it to ski and ride the lifts"); *Silva v. Mt. Bachelor, Inc.*, No. 06-6330-AA, 2008 WL 2889656, at *2 (D. Or. July 21, 2008) (although plaintiff did not read the release on the back of his ski pass, "plaintiff testified that he knew and expected that his lift ticket would contain a release, based on his extensive skiing experience. . . . Plaintiff also admitted that he understood the terms of the release, and plaintiff cites no case that requires a recreational release agreement to be signed."); *Beaver v. Grand Prix Karting Ass'n*, Inc., 246 F.3d 905, 909-10 (enforcing liability release against injured go kart racer in absence of signed release; rider was aware of release and participated in race anyway, manifesting assent to release).

Plaintiff argues, however, that Vail can proffer only the front side of the lift ticket which Plaintiff acknowledged in her deposition that she read. This states only in tiny print (likely 5 pt. font according to Plaintiff), at the very end, that there was a "warning" on the reverse side, which would have appeared like this: "IMPORTANT WARNING ON REVERSE". She asserts that "[u]nder the best of circumstances, this may have alerted a very inquisitive middle aged person, who had brought along her strongest reading glasses, that there was a warning on the reverse side, but certainly not a release agreement." (Pl.'s Resp. Opp. to Def.'s Mot. Summ. J., at 28.) Further, she asserts that if one "ventured to look at the back side of the ticket, which plaintiff has categorically denied she did, there was again some more tiny language which at the top of it again said "warning," and not release." (*Id.*) Plaintiff argues that this does not satisfy the third and fourth criteria of *Jones*, and that it is Plaintiff who should get the summary judgment as to this issue.

I agree that both the statement on the front of the lift ticket advising of an important warning on the reverse as well as the waiver of liability are written in small font that is difficult to read. The Colorado Court of Appeals recently noted that "'a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon.'" *Stone v. Life Time Fitness, Inc.*, ___ P.3d ___, 2016 WL 7473806, at *4 (Colo. App. Dec. 29, 2016) (quotation omitted). Ultimately, however, I am not convinced, however, that the provisions are so small that a person would be compelled to resort to a magnifying glass in order to read them. Instead, I find that they can be read, albeit with difficulty. I also note that the size of the warning was only one of the factors that the *Stone* court relied on in invalidating the exculpatory agreement at issue in that case, and find that none of the other factors relied on in that case are at issue here. Moreover, given that Plaintiff admitted she read the front of the lift ticket that advised of a warning on back, and given the fact that she had signed a release the year before in 2012 in connection with the chairlift, I find that Plaintiff knew or should have known that Vail conditions its participation in Fun Park activities, including the chairlift, on a waiver of liability. Her failure to read, or even attempt to read, the warning on the back of the lift ticket does not absolve her from the waiver of liability.

Finally, Plaintiff argues that a defense based upon waiver is barred by the premises liability statute. Plaintiff asserts that "a ski lift operator must exercise the highest degree of care commensurate with the lift's practical operation, regardless of the season", citing *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 72 (Colo.

1998).  In so holding the *Bayer* court found that the Ski Safety Act and the Tramway Act did not preempt or supersede that common law standard of care.  *Id.*  Plaintiff further argues that the Colorado Premises Liability Act ["CPLA"] establishes statutorily the duty of a landowner, and that allowing a waiver of liability/exculpatory agreement to avoid this duty would defeat the expressed public policy of the CPLA.

I reject Plaintiff's argument.  First, the Colorado Supreme Court in *Bayer* did not address the applicability of a waiver of liability or exculpatory agreement in connection with a premises liability case against a ski resort.  Second, the Tenth Circuit has addressed this issue and found that an exculpatory agreement does not abrogate the CPLA, as the CPLA "does not speak to exculpatory agreements."  *Mincin*, 308 F.3d at 1111 n. 2.  It noted that the CPLA is relevant "only insofar as it demonstrates that, at least in some circumstances, premises liability is an issue of public concern grave enough to invalidate an otherwise valid exculpatory agreement."  *Id.*  Here, as in *Mincin*, I find that this case does not involve an issue of public concern grave enough to invalidate the waiver of liability at issue.  Unlike the disparity of power created by the "practical necessity" in housing rentals that the Colorado Court of Appeals relied on in a case cited by Plaintiff, *Stanley v. Creighton*, 911 P.2d 705, 707 (Colo. 1996), wherein the court invalidated an exculpatory clause in a residential lease, here there is no "practical necessity" as riding a chairlift is not an essential activity.  *Mincin*, 308 F.3d at 1111.  Instead, this was a recreational activity, and I previously found that Plaintiff did

not enter into the contract from an inferior bargaining position. *Id.*[5]; *see also Brigance*, 2017 WL 131797, at *9.

## IV. CONCLUSION

Based on the foregoing, I find that summary judgment is appropriate in favor of Vail and against Plaintiff in connection with the waiver of liability. It is therefore

ORDERED Defendant's Motion for Summary Judgment (ECF No. 54) is **GRANTED**. Judgment shall enter in favor of Vail and against Plaintiff. It is

FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 60) is **DENIED**. Finally, it is

ORDERED that the five (5) day jury trial set to commence on Monday, March 13, 2017, at 9:00 a.m. and the Final Trial Preparation Conference set on Thursday, February 23, 2017, at 10:00 a.m. are **VACATED**.

Dated: January 23, 2017

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

---

[5] Indeed, *Stanley* suggested that no public duty would exist in a commercial lease. 911 P.2d at 707. This distinction between residential and commercial leases is consistent with numerous cases uniformly holding that "businesses engaged in recreational activities" like Vail do not owe special duties to the public or perform essential public services. *See Mincin*, 308 F.3d at 1111; *Espinoza*, 809 F.3d at 1157; *Chadwick*, 100 P.3d at 467.